RESPUBLICA *against* JOHN NICHOLSON, Esq.

New loan certificates issued under the law of 1st March 1786, are not state debts, subscribable as part of the assumed debt to the loan proposed by congress under their act of 4th August 1790, nor redeemable under the act of assembly of 10th April 1792.

ASSUMPSIT for 22,583*l.* 0s. 7d. received by the defendant to the use of the commonwealth.

It appeared in evidence, that the defendant had received 62,549$\frac{38}{100}$ dollars, from the state treasury, under the governor's warrants, on certain new loan certificates, issued under the act of assembly of 1st March 1786, considering them as subsisting state debts. 2 Dall. St. Laws, 417. And whether these new loan certificates were properly such state debts, subscribable on loan to congress, under the act of the United States, passed 4th August 1790, 1 Cong. Laws, 199, § 13, 202, § 17, Oswald's edit., and redeemable by the act of assembly of 10th April 1792, 3 Dall. St. Laws, 267, were the questions on which the cause turned.

There is this difference between the subscription of the domestic and assumed debt. On the domestic debt, under the above act of congress, §§ 4, 5, two thirds of the principal are made 6 per cent. One third of the principal is made deferred debt, papable with interest at 6 per cent after 1800, and the interest is made payable in 3 per cent. So that the interest on the whole sum may be computed at 4$\frac{1}{2}$ per cent, or thereabouts.

Of the assumed debt, under § 15, of the above act, one third of the principal and interest is made 3 per cent. Two thirds of two third parts are made 6 per cent, and the remaining one third of the two third parts is made deferred debt payable with interest at 6 per cent. after 1800.

Consequently, this commonwealth having by § 2 of the law of 10th April 1792, allowed a full equivalent for the loss sustained on the deferred stock of the United States, and the 3 per cent stock, by the creditors of the state, who subscribed to the loan proposed by congress, Pennsylvania would lose the sum of 13,000 dollars or thereabouts, on the said new loan certificates of the defendant, in case they were not subscribable or redeemable.

In the event, the commissioner of loans of the United States, by the direction of the secretary of the treasury, rejected the subscription of these new loan certificates, and therefore the commonwealth could obtain no credit for them.

A special jury was sworn in this cause at the last April term, when after five days bestowed thereon, and a very elaborate discussion of it, the jury could not agree on their verdict. It came

on again for trial this term.  Messrs. Ingersoll, Wilcocks and Rawle, of counsel for the state, and Messrs. Lewis, Tilghman and Gibson for the defendant, and the different points were argued a second time with great ingenuity.  But the reporter will not venture to detail the arguments of counsel.

The Chief Justice now gave the charge of the court to a special jury, highly respectable.

The facts in this suit are not controverted.  The greater part of the evidence consists in acts of congress and of this state, and in a variety of written documents and official papers, and it therefore becomes the duty of the court to express their sentiments in a pointed manner.  *Ad quæstionem juris respondent judices.*

It has been contended on the part of the defendant, that these new loan certificates were proper state debts.  Congress by their act of 18th April 1783, (8 vol. Journ. of Cong. 186,) did resolve, that it should be recommended to the several states, to vest congress with a power to collect certain duties on goods therein enumerated, and also a duty of *five per centum ad valorem*, on all other goods, at the time and place of importation, to enable them to pay the public debts.

This state, in pursuance of the recommendation, on the 23d September 1783, (2 Dall. St. Laws, 147, Loose Laws, 223,) by law, did vest congress with the said power, but not to take effect until each of the states should make laws conformably thereto.  And some of the states having declined to comply with the recommendation of congress, Pennsylvania by her act of 16th March 1785, (2 Dall. St. Laws, 464,) appropriated the imposts on goods, taxes, and arrearages of taxes, for the benefit of the public creditors, her meritorious citizens, whom congress under the then existing circumstances could not provide for, and made use of the agency of the continental loan officer to effect their purposes; but by § 18, it was expressly provided, that the payment of interest on the public debt of the United States, should only continue until congress should make provision for the same.  This was supposed by congress to interfere with their measures.  They appointed a committee, (August 11, 1786,) and a conference took place between them and this commonwealth, (21st September 1786,) but in the event this state adhered to her system. And congress, by their act of 27th September 1785, (10 vol. Cong. Journ. 328,) made such regulations concerning the payment of interest, as rendered the execution of the last act of assembly impracticable.  Pennsylvania then by her act of 1st March 1786, (2 Dall. St. Laws, 417,) created these new loan certificates, which were to be given in exchange for loan office certifi-

cates, and other certificates of the United States' debts, which were entitled to interest under the law of the 16th March preceding, and the state treasurer was substituted in the place of the continental loan officer, to pay the interest on the new loan certificates half yearly.

The new constitution of the United States afterwards came into operation, by New Hampshire acceding to it as the ninth state. In consequence whereof, (Constitution, art. 1, § 10,) the powers of laying and collecting imposts and excises were vested in congress, and no state without their consent, could lay any imposts, or duties on imports or exports. This commonwealth therfore, by their act of 27th March 1789, (2 Dall. St. Laws, 694,) reciting the former laws which had been passed, declared that only four years interest should be paid on the new loan certificates, that all acts securing the principal should cease, and that the continental certificates which had been loaned to the state, should be re-exchanged for the new loan certificates.

It has been warmly contended, that this last act of the legislature is unconstitutional and void. And unquestionably, a state or individual cannot discharge themselves from an honest debt, fairly contracted, by a mere act of power. But it is certainly the duty of a court of justice to use great reflection and consideration before they pronounce a statute to be of no effect. (1 Bla. Com. 91.)

Under the summary review we have had of the foregoing public acts, it may justly be questioned how far the new loan certificates were subsisting state debts, properly speaking. It is true, the law of the 1st March, 1786, does not declare that they shall continue until congress shall make provision for the public debts; but it is likewise clear, that it was engrafted on the law of the 16th March 1785, which contemplated the state's assumption of the payment of the interest as a mere temporary expedient, for the relief of a meritorious class of her citizens, and the payment of interest is thereby expressly limited (sect. 18,) to the period, when congress shall make effectual provision for the discharge of interest, and arrearages of interest, due and arising on the debts of the United States, contracted during the late war. These two laws, being made *in pari materi*, must be construed together, and each will throw light on the other. The new loan certificates on the face of them, declare the payment of the half yearly interest to I. S. or bearer, according to the directions of the act; and consequently every one who held them was bound to look to those directions, and the funds thereby created for their payment, and is not deceived.

These new loan certificates are moreover contradistinguished from state debts, in the law creating them, when in the 11th section of that law it is said, they shall be receivable in the land office, in like manner as the certificates for debts due by this state.

If the defendant was *ex æquo et bono* entitled to the money he has received, though he might not be able to recover it at law, he should not be obliged now to repay it, though other holders of such certificates did not experience the same advantages. But this does not appear to us to be the case. Even supposing the act of 27th March 1789 to be unconstitutional, the defendant received the money earlier than he was entitled to it, the period of payment being limited in the body of the new loan certificates to the 1st March 1796.

If a mortgage should be given of lands yielding annual profits, which afterwards should become wholly drowned, or sunk by an earthquake, equity would decree that interest should cease. So where by a national and general calamity, 14 Vin. 457, pl. 1, nothing is made out of lands assigned for payment of interest, interest ought not to run on during the time of such calamity. And interest was moderated on account of the badness of the times between the years 1642 and 1648, Nels. Cha. Rep. 150, 2 Cha. Rep. 78, 2 Cha. Rep. 86, 15 Vin. 474, pl. 1; but Lord Chief Justice Vaughan was of opinion that the whole of the interest should be taken away during that period. *Ib.* 152. *Ib.* 81.

Now here it was fully understood from what fund the interest on the new loan certificates was to arise, and the capital part of that fund was taken away by the common consent of the citizens of the union, when they adopted a new, energetic, federal system of government; and this commonwealth afterwards lay under no moral obligation to continue the payment of interest to her citizens on the public debt of the United States. The defendant is in the same situation as his fellow citizens. The act of assembly of the 10th April 1792, 3 Dall. St. Laws, 270, § 6, has prescribed the conditions on which the certificate holders subscribable to the loan, shall be entitled to the benefit of that act. " They shall subscribe to the loan to be renewed, and transfer to the state treasurer, for the use of the commonwealth, the certificates received from the United States in consequence of such subscription. " The defendant has not complied with this condition precedent. He has not thus subscribed and transferred. The proper officers of the department of the United States have rejected his subscription. It is no answer to say that it was impossible for him to perform the

condition. The legislature of the state must in this instance be considered as *supreme*, and like a testator in a will, *only* can dictate the terms on which each individual shall entitle himself to their bounty.

The court therefore, are of opinion, that these new loan certificates were not *redeemable* under this law.

The next question to be considered is, whether these new loan certificates were subscribable to the loan of congress as part of the assumed debt.

The words of the act of congress, passed 4th August 1709, 1 Cong. Laws, 200, § 13, are these; " and that the sums which shall be subscribed to the said loan, shall be payable in the principal and interest of the certificates or notes, which prior to the first day of January last, were issued by the respective states as acknowledgments or evidences of debts by them respectively owing, except certificates issued by the commissioners of army accounts in the state of North Carolina in the year 1786."

" Provided, that no such certificate shall be received, which from the tenor thereof, or from any public record, act or document, shall appear or can be ascertained to have been issued for any purpose other than compensations and expenditures for services or supplies towards the prosecution of the late war, and the defence of the United States, or of some part thereof during the same."

And in a subsequent section, the words are, (*Ib.* 202, §§ 17, 18,) " but as certain states have respectively issued their own certificates, in exchange for those of the United States, whereby it might happen that interest might be twice payable on the same sums:

" Be it further enacted, that the payment of interest, whether to states or to individuals, in respect to the debt of any state, by which such exchange shall have been made, shall be suspended until it shall appear to the satisfaction of the secretary of the treasury, that certificates issued for that purpose by such state have been re-exchanged or redeemed, or until those which shall not have been re-exchanged or redeemed shall be surrendered to the United States."

It appears from the title, as well as the clear words of the law of 1st March 1786, that new loan certificates have been issued for other purposes, than compensations or expenditures for services or supplies towards the prosecution of the late war, to wit, for the purpose of relieving our own citizens, in receiving from them on loan certain debts of the United States of America, and for funding the same, and for paying the annual interest of such loans, and the interest of certain debts of this state

every six months." In no sense can those certificates be taken to have been issued for services and supplies within the meaning of the act, as those services and supplies must have been meant to be services and supplies furnished by the state.

We apprehended the meaning of the 18th section of the act of congress to be this. As certain states had issued their own certificates in exchange for those of the United States, (viz. Massachusetts, New York, Pennsylvania, Maryland and North Carolina,) and as the tenor of those certificates might be so general as not to be distinguished on the face of them from certificates issued for other purposes, the intention of the legislature was, that no state who had thus issued their own certificates in exchange for those of the United States, should have any interest paid on their part of the assumed debt, either to the state itself or to individuals, until it should appear to the satisfaction of the secretary of the treasury, that the certificates so issued had been re-exchanged, or redeemed or until those, (to wit, such state certificates,) which shall not have been re-exchanged or redeemed shall be surrendered to the United States.

This construction reconciles every word of the law, and any other construction introduces an absurdity. It will likewise account for the apprehension of the legislature, that interest might be twice paid for the same debt, as if any of the certificates were left unexchanged, or unredeemed, or not surrendered to the United States, they might be presented for subscription, and purporting on their face, to be evidences of state debts, they might be received, and interest be paid thereon, and also on their co-relatives, the United States' certificates.

That the defendant's construction of this clause would introduce an absurdity, is thus demonstrated. It supposes that the new loan certificates were subscribable, and at the same time makes them unsubscribable, unless they are exchanged or redeemed by the state, or surrendered to the United States.—When they are re-exchanged or redeemed they are annihilated; and when they are surrendered to the United States, that must likewise be for their destruction, as the word "surrender" would not have been made use of on any other ground.

The word "those" in the latter end of the same section, must necessarily relate to the certificates issued by the state, as no other kind of certificates are mentioned in the whole of the section.

For these reasons, we apprehend, that it was not the meaning of congress in their act of 4th August 1790, to admit new loan certificates, to be subscribed, as part of the assumed debt on loan.

It is also worthy of observation, that the defendant's construction of the act of congress, and of the law of 10th April 1792, would place the holders of continental certificates in a worse situation, than the holders of new loan certificates, received in exchange for continental certificates, which could never have been the intention of either legislature.

Upon the whole, the court are unanimously of opinion, that these new loan certificates were neither subscribable, nor redeemable, and consequently that the state is entitled to recover in the present suit.

The jury should either find a verdict for the amount of the money paid by the state treasurer to the defendant, or by affirming the new loan certificates to be the property of the state, find for the commonwealth, a sum of money equal to the difference between the real value of the amount of the new loan certificates produced by the defendant, and the sum he has received from the treasury.

Such a verdict will place the defendant precisely in the same state, with the other holders of new loan certificates, and there appears to us no reason for a discrimination.

Verdict for Republica for 4208*l*. 8*s*. 10*d*. damages.